**Diane COYLE, Appellant,**

v.

**MIDDLE BUCKS AREA VOCATIONAL TECHNICAL SCHOOL.**

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1994.

Decided Dec. 22, 1994.

Charles L. Herring, for appellant.

David L. Masenheimer, for appellee.

Before PELLEGRINI and KELLEY, JJ., and KELTON, Senior Judge.

KELLEY, Judge.

Diane Coyle appeals from an order of the Court of Common Pleas of Bucks County (trial court) which affirmed an adjudication by the Middle Bucks Area Vocational–Technical School (School) suspending her from her professional employment with the School.

Coyle was employed as an instructor in the airline travel and recreational program of the School from 1989 up to and including the 1991–92 school year. On June 1, 1992, Coyle was notified that the subject she taught as part of the program, Travel and Transportation Marketing, was being curtailed due to low enrollment and that Coyle's contract would not be renewed.[1]

On June 18, 1992, the Executive Council, the School's governing body, voted to furlough Coyle effective June 15, 1992. By letter dated June 24, 1992, Coyle was informed that the Executive Council had approved her furlough. On July 31, 1992, the

School received approval from the Department of Education, Bureau of Vocational–Technical Education (Department) to terminate the program in airline travel and recreation.

Coyle requested a hearing before the Executive Council which was held on September 30, 1992.[2] On December 14, 1992, the Executive Council issued an adjudication ratifying the suspension vote effective June 15, 1992. Coyle appealed to the trial court requesting reinstatement on the basis that she was denied both substantive and procedural due process.

The issue before the trial court was whether Coyle was properly suspended pursuant to the requirements of section 1124 of the Public School Code of 1949 (Law)[3]. Coyle argued that because the Department did not give its approval for the curtailment until after she had requested a hearing, the suspension is invalid. The trial court rejected Coyle's argument and affirmed her suspension prompting the present appeal.

▪ Initially, we note that we are required to affirm the action of the Executive Council unless we find a violation of Coyle's constitutional rights, an error of law or a manifest abuse of discretion by the Executive Council, or that any necessary finding of fact made by the Executive Council is not supported by substantial evidence. Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b); *Gabriel v. Trinity Area School District*, 22 Pa.Commonwealth Ct. 620, 350 A.2d 203 (1976).

On appeal, Coyle presents the following two issues for review: (1) whether the School properly suspended Coyle under the provisions of section 1124(2) of the Law, and (2) whether Coyle's due process rights were violated when the Executive Council both initially suspended Coyle then decided the outcome of her local agency appeal.

---

1. The class enrollment during the years of Coyle's employment was as follows:

| | |
|---|---|
| 1989–1990 | 15 students |
| 1990–1991 | 12 students |
| 1991–1992 | 8 students |
| 1992–1993 | 1 enrollment with 4 applications |

2. The record shows that Coyle requested a hearing before the Executive Council on June 17, 1992.

3. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1124.

Section 1124 of the Law, which empowers local school authorities to suspend professional employees under certain circumstances, provides in pertinent part:

### Causes for suspension

Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

(1) Substantial decrease in pupil enrollment in the school district;

(2) Curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors, approved by the Department of Public Instruction, as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction;

■ In effect, pursuant to section 1124, the Executive Council must establish:

1. a curtailment of the educational program on recommendation of the superintendent;

2. concurrence by the board of school directors or in this case, the Executive Council; and

3. approval by the Department of Public Instruction.[4]

*Rosen v. Montgomery County Intermediate Unit No. 23,* 90 Pa.Commonwealth Ct. 335, 495 A.2d 217 (1985).

There is no dispute that the School had adequate grounds upon which to suspend Coyle due to either a substantial decrease in enrollment or a curtailment of the educational program, nor is there any question of the Executive Council's concurrence. Coyle's sole argument concerns the interpretation of the third element set forth above.

■ Coyle argues that in order for a suspension to occur, the Law requires the Department to approve the curtailment of a subject program without delay after the recommendation of the superintendent and con-

currence by the Executive Council, but prior to the request for a hearing. However, Coyle argues, in this case the School did not seek the Department's approval until the School realized that it would have to defend itself in a hearing. In effect, Coyle proposes, the School maintained an illusion that it was complying with the statutory requirements, an illusion that violates the Law. We disagree.

In *Cadonic v. Northern Area Special Purpose School,* 57 Pa.Commonwealth Ct. 42, 426 A.2d 186 (1981), we addressed this very question. In similar circumstances, a vocational-technical education instructor was suspended under section 1124 of the Law due to a curtailment of the program she was involved with. The educational authority upheld the suspension, and the trial court affirmed on appeal.

Before this court, among the issues concerning the school authority's compliance with the requirements of section 1124, was whether the Department satisfied its approval function when such approval was not obtained until *after* the first hearing and before the second hearing. Relative to the present controversy, we held that despite the circumstances, section 1124 was satisfied in that approval by the Department was obtained and placed into evidence prior to the closing of the hearing.

Here, there was no delay equivalent to that occurring in the *Cadonic* case. To the contrary, even though the evidence suggests that Coyle requested her hearing before the Department approved the curtailment, the approval was received on July 31, 1992, a full two months prior to the time of the hearing before the Executive Council on September 30, 1992. In compliance with the *Cadonic* standard, the approval was obtained with ample time to place it into evidence at the hearing.

■ Secondly, Coyle argues that the School violated her due process rights as a tenured professional in that the School failed to provide a pre-suspension hearing. This argument is without merit in that we have

---

4. The Department of Education succeeded to the duties and powers of the Department of Public Instruction pursuant to section 1 of the Act of July 23, 1969, P.L. 181, 71 P.S. § 1037.

consistently held that post-suspension hearings for professional employees comply with due process requirements. *Sto–Rox School District v. Horgan,* 68 Pa.Commonwealth Ct. 416, 449 A.2d 796 (1982); *Andresky v. West Allegheny School District,* 63 Pa.Commonwealth Ct. 222, 437 A.2d 1075 (1981).

Finally, Coyle maintains that the School violated her due process rights by commingling conflicting functions when it initially decided to suspend Coyle then acted as an allegedly impartial tribunal during Coyle's local agency hearing. Coyle principally relies on *Lyness v. State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992), for the proposition that where there is merely an appearance of non-objectivity in an administrative prosecution and adjudication, regardless of whether or not any actual commingling of functions existed, an impermissible violation of the due process rights of the accused occurs.

In *Lyness,* the State Board of Medicine convened to hear evidence against a physician and determined that formal charges should be lodged and a formal hearing be held. Although a hearing examiner heard the evidence and made a recommendation, the recommendation was reviewed by the State Board of Medicine with many of the same members participating. The Board decided to revoke the physician's license to practice medicine.

In consideration of the physician's appeal, we held that there was no per se violation of due process and required a showing of actual bias. The Supreme Court reversed, stating that the fact bias may or may not have occurred is inconsequential. Rather, the Supreme Court continued, the potential for bias and the appearance of non-objectivity is sufficient to violate the due process requirements of the constitution.

In *Harmon v. Mifflin County School District,* —— Pa.Commonwealth Ct. ——, 651 A.2d 681 (1994), we recently applied the *Lyness* rationale to the termination of a nonprofessional public school employee who was dismissed by the school board for improper conduct based on the recommendation of his supervisor. Challenging the termination under section 514 of the Law, the employee requested and received a hearing before the school board. The employee challenged the school district solicitor's participation in the hearing as "impermissible commingling" because the solicitor was present at the meeting when the school board decided to terminate the employee. The school board denied this challenge and sustained the termination. The trial court affirmed.

On appeal, we considered the employee's due process argument based principally on the *Lyness* decision. In vacating the order of the trial court, we held that *Lyness* was inapplicable to the case because section 514 of the Law requires that the school board, as the employer, dismiss employees and then hear the challenge to the dismissal. Specifically, we stated that:

> While *Lyness* required that there be a "wall of separation" between those proffering the charges and those adjudicating the charges in an agency, that does not mean that complete separation has to be observed in every case for due process requirements to be met. The process that is due a person does not always require a trial-type hearing or the complete separation of functions that takes place in a judicial proceeding.

*Harmon,* —— Pa.Commonwealth Ct. at ——, 651 A.2d at 685.

Similarly, the Executive Council in the present matter is empowered by the Law with the authority to determine which programs are to be curtailed. Moreover, unlike the disciplinary actions taken by the governing bodies in *Lyness* and *Harmon,* this determination by the Executive Council was required to be approved by the Department. Only with such approval presented at the hearing can the Executive Council fulfill its obligatory duty of entertaining appeals from the professional employee suspensions which inevitably result from a curtailment in programs.

Further, as the trial court properly noted, a second distinguishing characteristic of this case is the fact that the initial actions of the Executive Council were not prosecutorial in nature. Rather than prosecuting allegations of immoral professional conduct or poor

teaching performance, the Executive Council acted within its statutory capacity to furlough an employee faced with the curtailment of her educational program for lack of enrollment.

Accordingly, the order of the trial court is affirmed.

### ORDER

NOW, this 22nd day of December, 1994, the order of the Court of Common Pleas of Bucks County, dated January 25, 1994, at No. 93–100–13–6, is hereby affirmed.